**Form for Filing a Section 1983 Civil Rights Complaint (by persons not in jail or prison)**

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF MISSISSIPPI
Jackson    **DIVISION**

YVETTE M. CHAVEZ (Fu DICCIARY)

ALEX R. TORRES #79004-180



SOUTHERN DISTRICT OF MISSISSIPPI
FILED

MAR 11 2021

BY_____
ARTHUR JOHNSTON              DEPUTY

(Enter above the full name of the Plaintiff[s]
in this action.)

-vs-

CENTRAL MISSISSIPPI CORRECTIONAL
FACILITY
(CMCF) SUPERINTENDENT RON KING

C.O. LACEY  MDOC(CMCF)

MISSISSIPPI DEPARTMENT OF CORRECTIONS
COMMISSIONER PELECIA E. HALL

AND
JOHN DOES 1 through 5   Collectively and Individually defendants

Case No. 3:21 cv 189 CWR-FKB
(To be assigned by Clerk)

(Enter above the full name of ALL Defendant[s]
in this action. Fed. R. Civ. P. 10(a) requires that
the caption of the complaint include the names of
all the parties. Merely listing one party and "et al"
is insufficient.)

### COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983
### (by persons not in jail or prison)

III. Parties
(In item A below, place your name in the first blank and place your present address in the
second blank. If more than one plaintiff, attach an additional sheet that provides each plaintiff's
name and address.)

A.    Name of Plaintiff: Yvette M. CHAVEZ
        Address: ____ 5647 S. BURNHAM ST GLOBE, AZ 85501

(In item B below, place the full name of the defendant in the first blank, his official
position in the second blank, and his and his place of employment in the third blank.
Use Item C for the names, positions, and places of employment of an additional

②

PLAINTIFF: ALEX RAMIREZ TORRES

& VICTIM          # 79004-180

                    USP-LEE

                    PO BOX 305

                    JONESVILLE, VA 24263


WHERE INCIDENT TOOK PLACE THEN THIS ADDRESS

WAS AT: CMCF MDOC

            FACILITY 720 C BUILDING

            IN RANKIN COUNTY, MISSISSIPPI

INCIDENT ON: JULY 15TH 2018

defendants.)

B. Defendant, _LACEY_ , is employed as
_CORRECTIONS OFFICER_
at _CENTRAL MISSISSIPPI DEPARTMENT OF CORRECTIONS (CMCF)_ .

C. Additional Defendants:

CENTRAL MISSISSIPPI DEPARTMENT OF CORRECTIONS (CMCF) SUPERINTENDENT
RON KING

CENTRAL MISSISSIPPI DEPARTMENT OF CORRECTIONS (CMCF) COMMISSIONER
PELECIA E. HALL

AND JOHN DOES 1 THROUGH 5   COLLECTIVELY AND INDIVIDUALLY
DEFENDANTS.

## IV. Statement of Claim

State here as briefly as possible the <u>facts</u> of your case, that is, what happened that caused you to file this complaint. Describe how each defendant is involved. Include also dates and places where the complained of events occurred. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheet if necessary. ON JULY 15TH 2018:

PLAINTIFF TORRES 79004-180 INMATE AT THE CMCF WAS ATTACKED BY PRISON GUARD BY CO LACEY, PICKED UP TORRES 79004-180 FROM BEHIND AND DUMPED ON HIS HEAD CAUSING SEVERE INJURIES TO HIS SKULL AND INJURY TO HIS NECK AND VERTEBRAE. AND HAD TO RECEIVE 11 STAPLES TO HIS CRACKED HEAD. TORRES WAS NOT TAKEN TO MEDICAL IMMEDIATELY, IT WAS SEVERAL MINUTES BEFORE COLACEY ESCORTED HIM AFTER THE INCIDENT WHEN TORRES WAS LYING ON THE GROUND IN HIS OWN POOL OF BLOOD TELLING COLACEY THAT HE WAS HURT WHEN COLACEY "YELLING" OVER HIM TO GET UP. LACEY STATED TO TORRES THAT HE DIDNT GIVE A "L---". TORRES WAS NOT AT ALL BEING DISRES-PECTFUL TOWARDS COLACEY. TORRES WAS IN SEVERE PAIN DUE TO LANDING ON HIS HEAD WITH HIS FULL BODY WEIGHT AND THE FORCE OF MR COLACEY DOWNWARD THRUST WHEN HE THREW TORRES TO THE PAVEMENT WITH TORRES ON THE GROUND NOT ABLE TO MOVE HIS NECK FOR OVER 2 MONTHS AND HAD RINGING IN HIS EARS, EARPAIN, AS WELL AS VERTIGO AND SEVERE...

V. State the names of witnesses who would testify for you or on your behalf, and state **briefly** what they would say.

WITNESS'S NAME

WHAT THIS WITNESS WOULD SAY

JOHN DOE #2

THAT THE INCIDENT DID HAPPEN
BECAUSE HE WAS PRESENT.

UNKNOWN OF ANY OTHER
WITNESSES....

VI. Name all **documents** that you know of which would support your claim and state **briefly** what each document says or shows.

DOCUMENT                    WHAT THE DOCUMENT SAYS OR SHOWS

(LIMITED POWER OF ATTORNEY REQUEST) FOR ALEX TORRES TO GIVE POWER TO ATTORNEY TO
CHARLES B IRVIN TO APPOINT PURPOSES TO EXECUTE CLAIM, LOSS FIRMS
DRAFTS, CHECKS, RELEASES AND OTHER SETTLEMENT DOCUMENTS IN CONNEC-
TION WITH HIS DAMAGE CLAIM ARISING OUT OF AN ACCIDENT OR EVENT
THAT OCCURED (ON JULY 15TH 2018) AT MDOC CMCF ON JULY 21 2019
SIGNED BY TORRES AND NOTARIZED BY IRVINS ASSISTANT TYSHA
BROWN. (HINDS COUNTY)

(#1 - TECH RECORDS REQUEST FORM) REQUEST TORRES TO SIGN AND DATE TO HAVE HIS
MEDICAL RECORDS SENT ELECTRONICALLY TO IRVIN LAW BY
GIRVIN DATED ON APRIL 27TH 2019 FROM TORRES FOR GIRVIN
TO BE SENT TO: IRVIN LAW PLLC PO BOX 13154 JACKSON, MS 39236
THAT ALL MEDICAL ISSUES BE COMMUNICATED DIRECTLY TO
IRVIN LAW.

(PERSONAL INJURY INTAKE FORM) TORRES INFORMATION FROM HIS INJURIES ON JULY 15TH 2018
AT CMCF M DOC IN DETAIL OF ALL HE SUSTAINED AT THAT TRAGIC
TIME.

VII. Explain how you were injured (incurred medical costs, incurred physical injury and/or emotional distress, etc.) BY BEING THROWN HEAD FIRST TO THE CONCRETE FLOOR, CRACKING MY TOP
PICKED UP FROM BEHIND 7 OF MY SKULL, RECEIVING 11 STAPLES BY COLACEY, MY INJURIES WERE
VERY PAINFUL THAT I LAID IN MY OWN POOL OF BLOOD FROM MY INJURIES, MY NECK WAS TWISTED THAT
AS I LAY ON THE GROUND I COULDNT MOVE DUE TO THE FALL INTO FLOOR. I COULDNT COME TO
FOR A FEW SECONDS THEN AS I SLOWLY DID I WAS VERY DIZZY AND CONFUSED AND IN CRUCIAL
PAIN, I DIDNT GET IMMEDIATE MEDICAL ATTENTION. I WAS THROWN BACK INTO THE
VIII. Relief CAFETERIA BEING TOLD TO STAY GO BACK, BEING HUMILITAD IN FRONT OF OTHER
MALE INMATES IN CAFETERIA. AS THEY ALL WATCHED ME BLEEDING.

State briefly exactly what you want the court to do for you. I WANT JUSTICE FOR THE PERSONAL
(Count I)
INJURY THAT WAS DONE TO SON BY COLACEY AND FOR EXCESSIVE FORCE UNDER SECTION
42 USC 1983 & FAILURE TO TRAIN PRISON GUARDS AND STAFF UNDER SECTION 1983
(Count II)

## IV. STATEMENT OF CLAIM

Continued:

 DIZZINESS, AND TODAY TORRES HAS FLASHBACKS AND STILL HAS HEADACHES, AND MOODSWINGS, AND IRRITABLY.

COUNT 1   EXCESSIVE FORCE UNDER SECTION 1983

DEFENDANT C.O. LACEY'S

THE 5TH CIRCUIT HAS HELD IN MATES ALLEGING USE OF EXCESSIVE ^(THAT) FORCE IN VIOLATION OF THE EIGTH AMENDMENT MUST PROVE (1) SIGNIFICANT INJURY (2) RESULTING DIRECTLY AND ONLY FROM THE USE OF FORCE THAT WAS CEARLY EXCESSIVE TO THE NEED. (3) THE EXCESSIVENESS OF WHICH WAS OBJECTIVELY, UNREASON ABLE AND (4) THAT THE ACTION CONSTITUTED AN UNNECESSARY AND WANTON INFLICTION OF PAIN. (Hudson v McMillian 929 F2d at 1015. the court determined that respondents use of force was objectively unreasonable because no force was required. (The conducts of McMillian and Woods qualified as clearly excessive and occassioned unnecessary and wanton infliction of pain) In Whitley v. Albers the court further held that the question wether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on wether force was applied in a good faith effort to maintain or restore discipline and maliciously and sadistically, for the very purpose of causing harm. 475 at 320-321 quoting Johnson v. Glick, 481 F.2d. 1028, 1033 (CA2, cert. denied sub nom. 475 at 320-321 (quoting Johnson v. Glick 481 F.2d 1028, 1033 (CA2) cert. denied Sub nom Johnson v. Johnson, 414 US. 1033 (1973)

※ AT THE PRESENT TORRES MEETS ALL REQUIREMENTS

(6)

IV: STATEMENT OF CLAIM

continued:

AS PRESENTED IN Hudson. HE RECEIVED 11 STAPLES TO HIS SKULL
AS A RESULT OF HIS ATTACK BY DEFENDANT COLACEY WHO ACTED
IN A WAY THAT WAS OBJECTIVELY UN REASONABLE AND THE ACTION
CONSTITUTED UN NECESSARY AND WANTON INFLICTION OF PAIN.
ALSO. TORRES WAS NEITHER INVOLVED IN A PHYSICAL ALTERCATION
NOR WAS HE PART OF A PRISON FIGHT OR RIOT AND THERE WAS NO
JURISDICTION OF THE ATTACK OR AGGRESIVE CONDUCT AS IN
WHITLEY. TORRES WAS ONLY CERTAINLY TRYING TO GO TO THE
RIGHT CAFETERIA TO DINE IN. HE TURNED HIS BACK TO OFFICER
COLACEY AND JOHN DOE #2 TO COMPLY BUT WAS SUDDENLY ATTACKED
AND DUMPED TO THE PAVEMENT SO FAST AND UNEXPECTEDLY ONTO
HIS HEAD. THIS WAS AN INSTANCE WHERE COLACEY WAS CLEARLY
ACTING OUT OF ANGER AND MALICIOUSNESS AND WILLINGLEY
CHOSE A MORE UNPROFESSIONAL VIOLENT MEASURE TO RESOLVE
THE ISSUE OF HIS OWN HANDS THAN WHAT WAS REQUIRED TO.
TORRES 8TH AMENDMENT RIGHT TO BE FREE FROM CRUEL
AND PUNISHMENT AT THIS SADISTIC ACT WAS DONE SIMPLY
DUE TO THE FACT THAT MR. TORRES WAS A PRISONER AND
DEFENDANT COLACEY FELT HE COULD GET AWAY WITH
SUCH VIOLENT ACTS ON A PRISONER. THEREFORE UNDER
SECTION 1983, TORRES WAS SUBJECT TO EXCESSIVE FORCE
AND BRUTALITY AS A PRISON INMATE AND HAS A VIABLE
CLAIM UNDER THE STATUE AS A MATTER OF LAW.

IV. STATEMENT OF CLAIM

Continued:

COUNT II    PRISON FACILITY FAILURE TO TRAIN
            GUARDS AND STAFF UNDER SECTION 1983
            ALL DEFENDANTS

Thomas v Cumberland County the court quoted another decision that found the prison facility could be held liable for failure to train even by the observable facts and circumstances of a single incident US 3d 1994 The Court stated nevertheless, the Supreme court posited in Canton than In certain situations the need for training can be said to be so "obvious" that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights even without a pattern of constitutional violations 489 US, at 390 n 10 The Court offered a hypothetical example of this single incident "failure to train" liability.

IN REGARDS TO TORRES ATTACK AND INJURIES THIS "SINGLE INCIDENT" IS VERY TELLING IN THAT THE SAME GUARD THAT ATTACKED HIM WITHOUT PROVOCATION IS THE ONE THAT TOOK TORRES SEVERAL MINUTES LATER TO MEDICAL ASSISTANCE. CLEARLY IN A PRISON ENVIRONMENT AS LIKE IN CANTON CASE PRISON GUARDS CAN BE EXPECTED TO INTERACT WITH PRISONERS IN A HOSTILE AND AN AGGRESSIVE MANNER. AS THESE CONFRONTATIONS AND CONFLICTS ARE KNOWN TO ARISE, ADEQUATE TRAINING SHOULD BE IN PLACE TO ENSURE GUARDS ARE ON NOTICE NOT TO ACT IN SUCH MANNER AS TO USE SUCH FORCE AS COULD HAVE PARALYZED OR KILLED INMATE TORRES. FURTHERMORE THE LACK OF TRAINING RELATED TO RESTRAINING OR REDIRECTING A PRISONER AS WAS

IV. STATEMENT OF CLAIM

continued:

Outlined IN CANTON, WAS THE ULTIMATE CAUSE OF INMATE
TORRES INJURIES. THERE IS A HIGH DEGREE OF PREDICTABILITY
AS REQUIRED IN CANTON THAT GUARDS WHO NECESSARILY
OR UNNECESSARILY AIM TO EXACT PHYSICAL FORCE ON AN
INMATE TO BE TRAINED IN A WAY WHERE THEIR ACTIONS
DO NOT NEEDLESSLY PUT PRISONERS IN DANGER OF LIFE
AND PERMANENT INJURY AS C.O. LACEY DID. CLEARLY,
HE WAS NOT PROPERLY TRAINED IN THIS REGARD AND
AS A RESULT INMATE TORRES SUFFERED SEVERE INJURIES
WHICH COULD HAVE BEEN FATAL DUE TO THE ACTIONS
OF CO LACEY AND HIS LACK OF TRAINING BY THE
FACILITY.

THERE WAS NO INTERVENTION BY JOHN DOE #1
PRISON GUARD OR SARGEANT OR OTHER STAFF
MEMBER TO MAKE SURE INMATE TORRES WOULD NOT
GET FURTHER ABUSED. AND THERE WAS NO INTERVENTION
BY A SUPERVISOR OR ANY OTHER STAFF MEMBER TO
AID INMATE TORRES. THIS INCIDENT CLEARLY SHOWS
BOTH THE LEVEL OF AUTONOMY IN WHICH GUARDS COULD
CARRY OUT MALICIOUS ATTACKS AT THE FACILITY WITHOUT
ANY SAFEGUARD IN WHICH GUARDS COULD CARRY OUT
MALICIOUS ATTACKS AT THE FACILITY WITHOUT ANY SAFE-
GUARDS OR RESTRAINT BY OTHER GUARDS, STAFF OR
SUPERVISORY PERSONNEL.

IV. STATEMENT OF CLAIM

continued:

THIS GUARD SIMPLY TOOK INMATE TORRES WHOM HE USED AS A
HUMAN CRASH DUMMY OR A RAG DOLL INTO THE INFIRMARY WITHOUT
ANY FEAR OR CONCERN OF RETRIBUTION OR PUNISHMENT. IT IS
CLEAR THAT HIS AFTERTHOUGHT DID NOT CONSIDER WHAT HE DID
WAS ILLEGAL OR OUTSIDE OF COMPLIANCE IN ANY WAY. THIS IS
DUE TO FAILURE TO TRAIN. CO LACEY AND ALL OTHER GUARDS
AND BE HELD SEPERATELY LIABLE FOR THIS FAILURE
AND FOR VIOLATION OF INMATE TORRES 8TH AMENDMENT
RIGHTS UNDER SECTION 1983.

Continued STATEMENT OF CLAIM : AS A RESULT OF CRUEL AND INHUMANE
TREATMENT OF DEFENDANTS :
CENTRAL MISSISSIPPI CORRECTIONAL FACILITY (MCF) MDOC
CO LACEY , CMCF SUPERINTENDENT RON KING , MISSISSIPPI
DEPARTMENT OF CORRECTIONS COMMISSIONER PELECIAE HALL
AND JOHN DOES 1 THROUGH 5 COLLECTIVELY AND INDIVIDUALLY
(COUNT I)
BE HELD LIABLE FOR EXCESSIVE FORCE UNDER SECTION
1983 42 USC AND (COUNT II) FAILURE TO TRAIN PRISON
GUARDS AND STAFF UNDER SECTION 1983.
(MDOC superint CMCF)
＊ 1. HELD LIABLE   SUPERINTENDENT RON KING
CMCF
# 2. COMMISSIONER (MDOC) PELECIAE. HALL
# 3. CO. LACEY (MDOC) CMCF
(CMCF) MDOC
# 4 JOHN DOES 1-through 5   INDIVIDUALLY AND COLLECTIVELY
(COLLECTIVELY)

CONTINUED FROM TORRES PERSONAL INJURY INTAKE FORM
PROVIDED TO IRVIN LAW FROM MEDICAL
RECORDS AT CMCF (MDOC) BY HI-TECH AND IRVIN LAW, FOR
HIS DOCUMENT TO SUPPORT TORRES CLAIM
OF HIS INJURIES FROM COLACEY ON JULY 15TH 2018. APPROXIMATE
TIME WAS 11:30 A.M. BY THE CAFETERIA DINING HALL IN 720
COMPLEX. CONDITION AT TIME BEFORE INCIDENT IS IN PERFECT
CONDITION, PHYSICALLY AND MENTALLY, STATED TORRES.

| DOCUMENTS | WHAT THE DOCUMENT SAYS OR SHOWS |
|---|---|
| LIST OF MEDICAL PROVIDERS RELATED TO THIS INCIDENT | PROVIDERS NAME MDOC CLINIC |
| PROVIDER (MEDICAL) | MDOC PHYCHOLOGIST |
| PROVIDER (MEDICAL) | MDOC R&C MEDICAL PERSONEL |
| PROVIDER (MEDICAL) | MDOC R&C DOCTOR |
| DETAILED LETTER | TORRES DETAILED LETTER ENCLOSED OF WHAT HAPPENED AND HOW ON THAT DAY OF JULY 15TH 2018, BY COLACEY ENCLOSED IN THIS COMPLAINT. |
| SYMPTOM INVENTORY | HeadACHES, Severe |
| | Neck & SHOULDER PAIN Severe |
| | RINGING IN EARS Severe |
| | VERTIGO/DIZZINESS Severe |
| | SUDDEN UNUSUAL ANGER Severe |
| | DEPRESSION/SADNESS Severe |
| | ANXIETY/FEARFULNESS Severe |
| | CONFUSION/DISORGANIZED Severe |
| | LOSS OF PATIENCE Severe |
| | PERSONALITY CHANGE Severe |
| | HEADACHES Severe |
| | SLEEPLESSNESS Severe |

continued   TORRES'S PERSONAL INJURY INTAKE FORM

DOCUMENTS       WHAT THE DOCUMENT SAYS OR SHOWS
PERSONAL INJURY FORM      TORRES STATED IN HIS FORM
                    " BECAUSE OF THE WAY"
                    "I LANDED RIGHT DIRECTLY ON TOP
              OF MY HEAD AS MY SCAR WILL SHOW
              WHEN MY HEAD HIT THE PAVEMENT
              MY NECK "TWISTED" UPON THE PRESSURE
              OF MY WHOLE BODY ON MY HEAD.
              RIGHT AFTER THAT "I COULDN'T MOVE
              MY NECK FOR ALMOST TWO MONTHS.
              IT WAS IN PAIN FOR THOSE ONE,
              ALMOST TWO MONTHS.

VI CONTINUED FROM : NAME ALL DOCUMENTS THAT I KNOW

OF WHICH WOULD SUPPORT MY CLAIM AND, STATE BRIEFLY WHAT

EACH DOCUMENT SAYS OR SHOWS.

| DOCUMENT | WHAT DOCUMENT SAYS OR SHOWS |
|---|---|
| FROM CHARLIE BIRVIN LETTER TO CLOSE CASE | JANUARY 13, 2020 A LETTER TO ME YVETTE CHAVEZ AND ALEX TORRES TORRES 2019-01218 STATES: After doing strategic analysis o four long term goals, we've decided to shut out focus to only serve a specific subset of clients going forward. That said, Our team regrets to Inform You that we wont be able to work on your account anymore as of January 13, th 2020. As you move forward In looking for other counsel, we'd recommend. The Mississippi Volunteer Lawyers Project PO BOX 1503 Jackson MS 39215 601 944-9577 You should Contact other counsel to further pursue and protect your interest In this matter, Your new counsel should have adequate time to serve your Best Interests. and you should provide Your new counsel with your file for necessary review. We regret that this action was necessary. Sincerly, Charlie Irvin |
| Breach of Contract | I sent a complaint on Irvin Law for Breach of contract. But the MS Bar dismissed my case after hearing his side at the committee. He then provided a letter to MS Bar that is his reason to close case is because he wasn't comt- ortable with me asking companies the loan, It was upon Torres Alex my Son Request to ask Loan Companies for a loan I never asked Irvin Law. |

(13)

Continue from          STATE BRIEFLY WHAT I WANT

THE COURT TO DO FOR MY SON ALEX TORRES

AND BE GIVEN JUSTICE?

FOR WHEREAS, PREMISES, CONSIDERED, PLAINTIFF(S)

ALEX RAMIREZ TORRES # 79004-180

FUDICIARY AND MOTHER YVETTE M. CHAVEZ

AND AS A RESULT OF THE CRUEL AND INHUMANE

TREATMENT OF DEFENDANTS CENTRAL MISSISSIPPI

CORRECTIONAL FACILITY (CMCF) MDOC SUPERINTENDENT

RON KING, MISSISSIPPI DEPARTMENT OF CORRECTIONS

CMCF PELECIA E. HALL AND JOHN DOES 1-5 PLAINTIFF

IS ENTITLED TO THE FOLLOWING DAMAGES INCLUDING BUT

NOT LIMITED TO (a) PHYSICAL, MENTAL, AND EMOTIONAL PAIN

AND SUFFERING AND MENTAL ANGUISH (B) ANY POTENTIAL

FUTURE LOST WAGES AND EARNINGS (C) ANY PUNITIVE DAMAGES

WHICH MAY BE ALLOWED IN LIGHT OF ITS EGREGIOUS AND

BAD FAITH WHEREFORE PREMISES CONSIDERED PLAINTIFF(S)

ALEX RAMIREZ TORRES HEREBY RESPECTFULLY REQUEST TRIAL

BY JURY BEFORE THIS HONORABLE COURT AND TO ENTER JUDGEMENT

FOR THE PLAINTIFF FOR THE FOLLOWING RELIEF?

THE PLAINTIFF BE AWARDED IN THE AMOUNT IN EXCESS OF THE

JURISDICTION MAXIMUM OF THIS COURT FOR ALL COST OF THIS ACTION

AND FOR ANY OTHER RELIEF PREJUDGEMENT AND POST JUDGE-

MENT INTEREST AND FOR ANY OTHER RELIEF APPROPRIATE UNDER

THE LAW FOR DEFENDANTS EXCESSIVE FORCE under section 1983 U.S.C 42

AND PRISON FACILITY FAILURE TO TRAIN GUARDS AND STAFF

UNDER SECTION 1983.

_____
_____
_____
_____
_____
_____
_____
_____
_____

IX. Jury Demand

I would like to have my case tried by a jury.

☒ Yes

☐ No

I (We) hereby certify under penalty of perjury that the above complaint is true to the best of our information, knowledge, and belief.

Signed this _20th_ day of _February_____, 20_21_____.

Yvette M. Chavez (Yvette M. Chavez)

Alex Ramirez Torres #79004-180 FBOP

Alex Ramirez Torres

_____

(Signature of Plaintiff/Plaintiffs)

I, Alex Ramirez Torres # 79004-180 (MTXDOC# F-79004) (I AM FEDERAL INMATE) am providing a written description of the events that occurred on July 15th 2018 in regards to officer Lacey's accessive force on me. This accessive force happend while I was being held in the Central Mississippi Correctional Facility (C.M.C.F.) in Pearl, Ms, in the 720 area outside the dining hall. Allow me to provide you with a detailed routine of how the meal time is cooridinated for a better understanding and for you yourself can picture as to how this incident took place.

Meal Routine: (I have also provided a sketch of the 720 area and the exact spot as to where this incident took place).

There are two dining halls in the 720 area that are adjacent to oneanother, one on the left side and one on the right side being separated by a wall so no one can communicate with one another, for instance, the inmates contesss that are in the left side dining hall cannot see the inmates in the right side dining hall because there is a wall in between them. Each dining hall has the capacity to hold one pod each, appx. 100 inmates. There are four pods in each building and there are three building, A building, B building and C building. When the inmates go to the dining hall pod by pod to go and eat their meals, each pod will usually go into the same dining hall every time they go eat, whether it be for breakfast, lunch or dinner. Eg., The pod I was in usually go to the left side dining hall. When a pod is in the left dining hall, there will be another pod in the right dining hall, it'll be the same routine for all buildings every meal. It is also important for you to know that because the dining hall holds roughly the same amount of inmates, (that are in each pod) it can get a little crowded, so the lines will usually come outside the dining hall door onto the sidewalk. Once the pod/inmates have occupied their seats to each dining hall, they all have to waite until all inmates have eaten and then the pods will be permitted to return back to their assigned pods, one pod after another with controlled movement policed by the c.o's to assure all inmates return to their respective pods.

This is the routine that the 720 meal time will conduct upon every meal. Now that I have provided you with this, I will now provideing you with a detailed description as to how this accessive force incident took place.

②

The excessive force:

On the day of July 15th 2018, I was woken up by an inmate, telling me that our pod was called to eat. At that moment, I quickly got dressed and then I went to the restroom to brush my teeth. After I finished, I walked out of the building towards the dining hall. Because I was running late, there was no line outside on the sidewalk so far more to be outside in line. I automatically thought that my pod is in the left side of the dining hall as that's where we always eat so I thought nothing of it to walk towards that side of the dining hall. As I was approaching, there was two officers standing outside the right side of the dining hall but they were facing the opposite direction of me. These officers were officer Lacey and a Sergeant to whoms name I can't recall at this time. So when I approached the dining hall, I was unnoticed, but its not that I was trying to be unnoticed. I was merely going about my business as they were theirs. As I walked inside the left dining hall door, I looked at the inmates and seen that that was not my assigned pod so I automatically turned around quickly to go out the door. Let me note that it is a strict rule that we are not to intermingle with other pods nor be in another pod unless its at rec time. If we are caught then we would get a disiplinary write up and have our privileges taken away such as commissary, phones etc. etc. So once I walked back out, officer Lacey and the Sergeant turned around at the sound of the door closing and that was when officer Lacey told me to go back in the dining hall that I just came out of. At that moment, I explained to him that that was not my assigned pod and explained to him what had happend and how I ended up going into that dining hall but he told me he didn't care and to go back anyways. then I told him if I go back in there with that pod then I'm going to have to leave with them and once another co recognizes that when we got back to the pod that thats not my assigned pod, I will get a write up. yet his exact words were, "I don't give a f___!"

At that time he then walked towards me in an aggressive way, so I turned around to avoid any further confrontation with him.

③

As I was walking twoards the door, to my surprise he came up behind me, putting his arms under mine and around my chest in a bearhug position and picked me up and started to walk twoards the dining hall he wanted me to go back in to, with my feet in the air. I couldn't touch the ground to walk myself. I told him to put me down that I'll go inside myself and at that moment is when he slammed me on top of my head. It wasn't on my side, like if my body or the side of my body hit the concrete. I went straight down right directly on top of my head. The scar will show you being that the scar sits directly on top of my head. It was pretty easy for him to pick me up high because I was only 5'6 and weight appx. 150 pounds compared to his 5'10 and weighing around or between 260-280. Upon the impact of my head hitting the concrete, I went into complete darkness for a couple of seconds and after that couple of seconds my vision came back however when it did my sight was that of a daze and I could also feel my neck starting to hurt. My vision came back but the dizziness was still there and my equilibrium was completely off balance keeping me in that dizzy state. At that time, the top of my head was hurting extreamly bad so I placed my hand on the top of my head then feeling that it was wet, looked at my hand and saw it was covered in blood. Then the blood started coming down on my face and not in little drips, blood was pouring down on my face and clothes. Officer Lacey was hovering over me yelling at me to get up not caring that I was bleeding. I told him that I was hurt and was unable to get up. My precise words were "I can't my neck hurts and I'm dizzy."

At that point officer Lacey got angry with me again picked me up again and proceeded to drag me twoards the dining hall door and threw me in to the dining hall. After all of the blood that was coming out from my head I don't understand why he kept being aggresive but he was and that is how I knew it was done out of malice. Knowing I was hurt and bleeding didn't show any remorse for what he has just done to me. This was done in front of two

④

pods, that is almost two hundred inmates. Once I was on the floor in
the dining hall, I sat upright but leaning over forward because of the
amount of blood coming from my wound that it made a puddle of
blood on the floor and was all over my clothes and shoes. Officer Lacey
knew I was seriously injured but walked away when I was on the
floor. After a few minutes officer Lacey came back and told me
to get up and go to medical, so I got up and he walked me to medical.
In 720 theres a Dr. that comes once a week to talk to inmates
that have medical issues, and on that day he happend to be there.
The nurses escorted me into a room and layed me down on the
bed that was in the room. My wound was then cleaned and I was
given a new set of clothes. After assessing my head wound the Dr.
said he was going to have to place staples in my head to close the wound.
The amount of staples totaled eleven. Once the Dr. was done stapling
my head back together, I informed him that I was unabled to
turn my head/neck in either the right or left direction because it was
to painful. This is because upon the impact of my head hitting the
concrete my head turned forcefully. The Dr. ordered me to remain
in the infirmary so I can be watched over night. The next day
it was worse, the pain in my neck went from bad to worse but I was
sent back to my assigned pod. However, because I was assigned to
the top bunk, it was very painful for me to get up and down the
bunk. I called my mom and told her about the incident and to
assist me in calling medical to see how I could go about the proceedure
in acquiring a bottom bunk. A couple of days later I was moved to
a different building to where I acquired a bottom bunk. However
my neck was still in severe pain. It would be a process for me to
get up and walk to the bathroom and/or shower. I couldn't sleep
on either side of my body because if I "leaned" my head to much
to either the left or right side or "turned" my head to the left or
right it would hurt. So I had to ly on my back only without moving
my head at all. It took about 2½ months to 3 months for my neck
to start recovering from this injury. I would be abled to move my

(5)

head to only a certain point, then it would hurt so I couldn't turn my head to look to the left or to the right up to 3 months. However, I have not fully recovered from this incident because of the big scar on the top of my head and the emotional toll it has taken on me. I can no longer shave my head with a razor because of the scar, and not because of the way it looks, even though that is another reason why it stresses me out but because of the scar itself, it is lumpy, so when I shave my head, I'd end up cutting it and there is absolutely no way around it. So I have been forced to stop shaving my head with a razor completely and I have been shaving my head since I was young. Every time I cut it, it bleeds alot and seems to get worse, so now I feel like I'am forced to grow my hair out even though I don't want to. So now I'm constantly uncomfortable with having to be felt like I have to grow my hair out. It keeps me in an irritable state because of it. If I bump it on something or if something bumps it, I will get a flashback thinking of the pain I went through at that time in my life, then I'll have mood swings. In addition to this I have virdigo now, something I've never had in my life. Ever since this happened to me, I will wake up dizzy and it will last for hours at a time. It will be like that for a couple of days then go away. Once I came in contact with attorney Charles Irvin my hopes for the justice I was seeking was high because of the promises he was giving me and my family. His words were sincere about how he was going to do his best to provide the results that I was looking for. I was lead for almost a year and a half and was comfortable thinking we did right by hiring Charles Irvin. My mom had conversated with Irvin and his assistant Tasha and would relay messages to me. They (Charles Irvin and Tasha with my mom) would communicate because when I signed the contract I had my mom on there for her to be given info about the case. However, my family and I were let down. My dad has been a witness to this from the start. Not only have I gone through physical and emotional stress from this incident from officer Lacey, I am not going through

(19.6)

6

additional stress from Charles Irvin by him dropping my case for no valid reason and breaking his end /agreement of the contract. Charles Irvin throughout the duration of this lawsuit had taken us step by step in how he was to proved in justice in this case. Upon every step that was conducted had explain that step and then when that step was completed, do the same thing onto with the next step. When we we started out, he wouldn't do anything without the contract and wouldn't go any further without the contract being signed, so I did my part dutifully and signed to the agreements of this contract. That about a year ago. Towards the end of the steps that he was taking us through is when I recieved a letter from my mom telling me Charles Irvin discontinued my case without any valid reason.

All he did was apologize. So now I sit here once again stressed because I can't get justice in my case. I can't get the justice I deserve to get from this awful incident. I don't know where to turn for justice, if I can't depend on a lawyer, who can I trust and who can I turn to ?: (

A contract is supposed to be honored, it is to possess solid merit upon an agreement. It is of solidified security without doubt beyond measure in a written for one to carry out his duties as specified and according to the contract and is to be held by that of a lawyer in the utmost term of professionalism and integrity. For this reason, I continue to be down in emotional stress once again. Do to Charles Irvins Breach of Contract. I find myself to be mentally, and emotionally scarred, because this is the first time I have ever delt with a lawyer on this type of level to where over time he has made me feel confident and had given me hope that justice was going to be given to me and my family.

For one to be constantly told by someone of authority that all will be well, and for pulling my heart, emotions and trust into this matter with Charles Irvin only to be told otherwise after so long he don't want any part of my case, has brung me down low in confidence that I will not find and get my justice. I plead for help and assistance in this matter.

My mom is there for anyone to can help me to contact her or myself. I Alex Ramirez Torres, in sound mind, and attentive to the that of which I have written to be that of all honestly. Written on this 11th day of March 2020

Signature